```
                  UNITED STATES DISTRICT COURT

                    DISTRICT OF NEW HAMPSHIRE


Sean Croft,
     Plaintiff

     v.                                Civil No. 04-cv-328-SM
                                       Opinion No. 2006 DNH 067
Jane Coplan,
     Defendant
```

## **O R D E R**

Plaintiff, Sean Croft, is a state inmate, currently being housed in a correctional facility in Colorado. Pursuant to 42 U.S.C. § 1983, he brings this action against Jane Coplan, the former warden of the New Hampshire State Prison in Concord, New Hampshire ("NHSP"). Croft claims Coplan orchestrated his transfer to an out-of-state correctional facility in a deliberate effort to hinder his ability to pursue a then-pending state court petition to reduce his sentence. In other words, he says defendant intentionally interfered with his constitutionally protected right to access New Hampshire's state courts. He seeks a judicial order directing his transfer back to New Hampshire, as well as $1,009,500.00 in damages, representing $100 for each day of the three years he claims to have suffered injury. Defendant denies and wrongdoing and moves for summary judgment. Croft objects.

For the reasons set forth below, the court concludes that there are no genuinely disputed issues of material fact and defendant is entitled to judgment as a matter of law.

**Standard of Review**

When ruling on a party's motion for summary judgment, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." Intern'l Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).

Nevertheless, if the non-moving party's "evidence is merely colorable, or is not significantly probative," no genuine dispute as to a material fact has been proved, and "summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-

50 (1986) (citations omitted).  As the Court of Appeals for the First Circuit has observed, "the evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial.  Conclusory allegations, improbable inferences, and unsupported speculation will not suffice."  Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997) (citations and internal quotation marks omitted).  See also Coyne v. City of Somerville, 972 F.2d 440, 444-45 (1st Cir. 1992) ("[T]hough for pleading purposes the line between sufficient facts and insufficient conclusions is often blurred, we nonetheless require that it be plotted.") (citation and internal punctuation omitted).

   The key, then, to defeating a properly supported motion for summary judgment is the non-movant's ability to support his or her claims concerning disputed material facts with evidence that conflicts with that proffered by the moving party.  See generally Fed. R. Civ. P. 56(e).  It naturally follows that while a reviewing court must take into account all properly documented facts, it may ignore bald assertions, unsupported conclusions, and mere speculation.  See Serapion v. Martinez, 119 F.3d 982, 987 (1st Cir. 1997).

**Background**

In May of 1995, Croft was sentenced to seven and one-half to fifteen years in prison for conspiracy to commit burglary, and a consecutive ten to twenty years for first degree assault. During his period of incarceration in the state prison system, Croft has accumulated an extensive disciplinary record. He acknowledges that he has received more than 100 disciplinary citations, though he says most were for "minor infractions, mainly tattooing." Plaintiff's memorandum (document no. 14-2) at 3. He does, however, admit that several involved more serious charges such as weapons possession and drug use. Id.

In light of Croft's disciplinary record, on June 6, 2000, he was transferred to a correctional facility in Massachusetts under the Interstate Compact System. In 2001, Croft requested a transfer back to New Hampshire on grounds that his behavior had improved and because he wished to be closer to friends and family. That request was granted and he was transferred to the New Hampshire correctional facility in Berlin. Shortly thereafter, however, Croft's behavioral problems re-emerged. Among other things, he received major disciplinary citations for assaulting a staff member, interfering with a cell search, and possession of drugs. Soon after that, he tested positive for the

presence of opiates. He was then transferred from the Berlin facility back to the NHSP in Concord and his status was upgraded to C-4 (close custody). While at the NHSP, Croft's behavioral problems continued and he was periodically transferred back and forth between C-4 and C-5 custody (also known as the Special Housing Unit, the most secure unit at the NHSP).

On October 28, 2002, a classification review team was again convened to review Croft's status. After considering the findings and recommendations of that group, Kimberly Lacasse, the Director of Classifications for the New Hampshire Department of Corrections, concluded that Croft should again be transferred to an out-of-state correctional facility. See Lacasse affidavit, Exhibit A to defendant's memorandum (document no. 13-3) at para. 11. Gregory Crompton, acting as defendant's designee, approved that decision. Id. Accordingly, Denise Heath, the Interstate Compact Coordinator, contacted several states to determine if they would be willing to accept Croft. All but Colorado refused. Seeking to prevent his impending transfer, Croft filed a petition for habeas corpus in state court. After conducting a hearing on the matter, the court denied Croft's petition on December 20, 2002. Exhibit A to plaintiff's memorandum (document no. 14-3).

On that same day – December 20, 2002 – Croft filed a motion in state court seeking a reduction in his sentence. The State received notice of that motion in mid-January and objected to any change in Croft's sentence, citing, among other things, his lengthy and serious disciplinary record while in prison. Exhibit C to plaintiff's memorandum (document no. 14-5). In March of 2003, while that motion was still pending, Croft was transferred to a correctional facility in Colorado, where he is presently incarcerated.

Approximately two months later, on May 7, 2003, the state court issued an order scheduling a 15 minute hearing for May 13, 2003, on Croft's pending motion for sentence reduction. The court also directed the State to arrange for his presence at that hearing. Exhibit D to plaintiff's memorandum (document no. 14-6). It appears the court was operating under the mistaken impression that Croft was still being housed in Concord, at the NHSP. See id. at 2. And, perhaps due to the limited amount of time to make travel arrangements, the State failed to produce Croft for the hearing. Nevertheless, the State acknowledges that it was responsible for insuring Croft's presence at the hearing and does not attempt to offer any excuse for its failure to meet that obligation.

Defendant, however, says she was completely unaware of the court's order directing the State to produce Croft for the hearing or that the State failed to comply with that order. Moreover, she says that if she had been aware of the court's transportation order, she would have made arrangements to get Croft to that hearing and/or sought additional time from the court to comply with it's directive.  Coplan affidavit, Exhibit B to defendant's memorandum (document no. 13-4) at para. 11.

Given Croft's absence, the court issued an order continuing the hearing on his motion for sentence reduction for approximately 60 days, unless the court ruled on the merits of the motion prior to then.  Exhibit E to plaintiff's memorandum (document no. 14-7).  Subsequently, the Clerk of the Court scheduled the hearing on Croft's motion for the latter part of July.  Accordingly, on May 19, 2003, Ms. Heath contacted the Colorado Department of Corrections to inquire about the possibility of arranging a video-conference link for the July hearing, so Croft might be heard without the need to transport him back to New Hampshire.  Those efforts were, however, soon rendered moot.

On May 22, 2003, the state court issued an order denying Croft's motion on the merits, based upon the written submissions. Among other things, the court concluded that Croft's record while an inmate "includes a lengthy disciplinary record and does not support any change in the sentence. Under these facts any modification or reduction [in his sentence] is not appropriate." Exhibit F to plaintiff's memorandum (document no. 14-8). In light of that decision, the court cancelled the previously scheduled hearing for July 23.

Reduced to its essence, Croft's complaint asserts that, while the decision to transfer him to an out-of-state correctional facility may have been made in October of 2002, by January of 2003, defendant knew that he had filed a motion with the state court seeking a reduction in his sentence. Accordingly, says Croft, at that point defendant should have recognized that transferring him to another state might interfere with his efforts to secure a reduced sentence and, therefore, she should have cancelled the plans to transfer him. He also complains that once his transfer to Colorado was complete, the State failed to arrange for his transportation back to New Hampshire for the original court hearing on his motion – a failure he attributes to defendant. He claims that if he had

been present for that hearing, he would have been able to testify on his own behalf, as well as obtain the favorable testimony of friends and family, in support of his efforts to secure a reduction of his sentence.  He says he was directly and demonstrably injured by defendant's conduct insofar as, once the court denied his motion, state law prevented him from filing another motion for sentence reduction for three years.  See N.H. Rev. Stat. Ann. 651:20.

### Discussion

While Croft's disappointment and frustration over the State's failure to produce him for the original hearing on his motion for sentence reduction are understandable, his claim against defendant is without merit.  It is, of course, well-established that the Constitution guarantees inmates the right to a "reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts."  Bounds v. Smith, 430 U.S. 817, 825 (1977).  That right of access, however, is not unbounded.  The constitution obligates prisons and prison administrators to afford inmates "adequate, effective, and meaningful" access to the courts.  Id. at 822.  But, as the Court of Appeals for the Seventh Circuit has observed, "[t]he constitutionally relevant benchmark is meaningful, not total or

9

unlimited access."  Campbell v. Miller, 787 F.2d 217, 226 (7th Cir. 1986) (emphasis in original).  See also Lewis v. Casey, 518 U.S. 343, 355 (1996) ("Bounds does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.").

To prevail on his claim that defendant violated his constitutionally protected right of adequate and meaningful access to the courts, Croft must demonstrate that he suffered an actual injury as a result of his transfer to Colorado, such as the inability to provide adequate legal support for his motion due to insufficient legal resources at the correctional facility in Colorado or the dismissal of his motion for failure to prosecute.  See, e.g., Casey, 518 U.S. at 349-51 (holding that inmates must do more than simply demonstrate that their constitutional right of meaningful access to the courts was impaired in some theoretical sense).  Croft has not done so.  And, his opposition to defendant's motion for summary judgment is insufficient to demonstrate the existence of any genuinely

disputed material facts or prevent the entry in defendant's favor of judgment as a matter of law.

The New Hampshire Supreme Court has made clear that an inmate who files a motion seeking a reduction in his or her sentence is not entitled to an evidentiary hearing on that motion as a matter of right.  Instead, the court in which the motion is pending has the discretion to grant or deny an inmate's request for oral argument or an evidentiary hearing.  See State v. Roy, 138 N.H. 97, 98 (1993).  In this case, although the state superior court originally scheduled a hearing on Croft's motion (and then rescheduled that hearing when Croft missed the original hearing), it ultimately ruled on the merits of Croft's motion, without the benefit of oral argument.  While Croft was not afforded the opportunity to present oral argument in support of his motion, he was able to fully and fairly present his claims to the court, which considered them on the merits.  It necessarily follows that, as a matter of law, he was not denied "adequate, effective, and meaningful" access to the courts.  See, e.g., Demoran v. Witt, 781 F.2d 155, 158 (9th Cir. 1986) ("A plaintiff in a civil suit who is confined in state prison at the time of a hearing has no absolute right to appear personally.").

If Croft objected to the lower state court's decision to rule on the merits of his motion based solely on the written submissions and without the benefit of oral argument, he should have either moved for reconsideration or appealed that decision to the New Hampshire Supreme Court. He did neither. As a result, his claim that the he likely would have prevailed on the motion, had he only be able to attend the originally scheduled hearing, is pure speculation. See generally Cadle, 116 F.3d at 960. It is certainly not the type of "injury" that is sufficient to vest him with standing to pursue a section 1983 claim for interference with his constitutionally protected right to meaningful access to the courts.

## Conclusion

If, when Croft was unable to attend the original state court hearing on his motion seeking a reduced sentence, the court had dismissed his motion for failure to prosecute, this might be an entirely different case. But it did not. Instead, the state court addressed and rejected Croft's motion on the merits. While it is possible to speculate (as does Croft) that he might have been able to more forcefully and/or persuasively present his case had he been afforded the opportunity to argue his motion orally, the state court obviously determined that it could rule on

Croft's motion based solely on the written record.  That decision is, under New Hampshire law, committed to the court's discretion.  If Croft disagreed with either the court's decision on the merits or its decision to proceed without oral argument, he should have moved for reconsideration or filed an appeal with the New Hampshire Supreme Court.

　　　Because Croft cannot demonstrate that he suffered any actual injury as a result of defendant's alleged conduct, he cannot, as a matter of law, prevail on his claim that defendant interfered with his constitutionally protected right to adequate, effective, and meaningful access to the courts.  For the foregoing reasons, as well as those set forth in defendant's memorandum of law, defendant's motion for summary judgment (document no. 13) is granted.  Plaintiff's petition for writ of habeas corpus ad prosequendum (document no. 15) is denied as moot.

　　　The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

*[signature]*
Steven J. McAuliffe
Chief Judge

June 14, 2006

cc: Sean Croft, *pro se*
    Andrew B. Livernois, Esq.